United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MIRSAD HAJRO, JAMES R. MAYOCK,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; T. DIANE CEJKA, Director, USCIS National Records Center; ROSEMARY MELVILLE, USCIS District Director of San Francisco; JANET NAPOLITANO, Secretary, Department of Homeland Security; ERIC HOLDER, Attorney General, Department of Justice,<br><br>Defendants. | Case No.: 08-1350-PSG<br><br>**AMENDED ORDER 1) GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT HOLDER; 2) GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF OTHER INDIVIDUAL DEFENDANTS; 3) GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS; AND 4) GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS.**<br><br>**(Re: Docket Nos. 47, 50)** |

In this action, Plaintiffs Mirsad Hajro ("Hajro") and James R. Mayock ("Mayock") seek

declaratory and injunctive relief under the Freedom of Information Act ("FOIA") and the

Administrative Procedure Act ("APA") for alleged violations by Defendant United States

Citizenship and Immigration Services ("USCIS"), together with Defendants Eric Holder

("Holder"),[1] Janet Napolitano ("Napolitano")[2] T. Diane Cejka ("Cejka"), and Rosemary Melville

("Melville").  Before the court are the parties' cross-motions for summary judgment on all claims.

---

[1] Plaintiffs originally sued Holder's predecessor as Attorney General Michael B. Mukasey.  *See* Docket No. 1.

[2] Plaintiffs originally sued Napolitano's predecessor as Secretary of Homeland Security, Michael Chertoff.  *See id.*

1

Case No.: 08-1350
ORDER

Having reviewed the briefs, supporting evidence, and applicable law, as discussed herein,

IT IS HEREBY ORDERED that summary judgment is GRANTED in favor of Holder;

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Napolitano, Cejka, and Melville on Plaintiffs' FOIA claims;

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claims for declaratory relief that when responding to requests from aliens and/or their attorneys for a copy of an alien registration file in the absence of a pending removal hearing, Defendant USCIS has engaged in a pattern and practice of violating FOIA's time limit provisions;

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claims for injunctive relief requiring USCIS to: 1) provide a copy of a requestor's file within the twenty-day time limit mandated by 5 U.S.C. § 552(a)(6)(A); and 2) give the written notice mandated by 5 U.S.C. § 552(a)(6)(B) if an extension of time is needed due to "unusual circumstances."  No later than December 18, 2011, the parties shall submit either a stipulated form of injunction, or their respective proposed forms of injunction;

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Hajro on his claim that USCIS is withholding non-exempt documents;

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claim that USCIS's Track 3 FOIA processing policy and regulation violates the Settlement Agreement and was promulgated in violation of the APA and FOIA; and

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Defendants on Plaintiffs' equal protection claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff Hajro

Mirsad Hajro is a lawful permanent resident of the United States who applied for naturalization in 2003.[3]  In October 2007, Hajro received notice that his application had been denied based on evidence in his alien registration file that allegedly revealed false testimony regarding his foreign military service.  On or about November 9, 2007, Hajro filed an appeal pursuant to 8 U.S.C. § 1447(a) and requested a review hearing before an immigration officer. Hajro also filed a request under FOIA with the Department of Homeland Security ("DHS"),

[3] Hajro has since applied for and been denied naturalization a second time on the same grounds. *See* Docket No. 51 at 1-2.

Case No.: 08-1350
ORDER

**United States District Court**
For the Northern District of California

USCIS,[4] National Records Center, seeking a copy of his alien registration file.  Hajro requested

expedited processing of his FOIA request under the terms of a 1992 national settlement agreement

("Settlement Agreement").  The Settlement Agreement provides for the establishment of a national

policy on priority for processing FOIA / Privacy Act requests to be used by Immigration and

Naturalization Service ("INS") officers.  The policy requires immediate processing of an expedited

request, where the failure to process a request immediately would either: (a) jeopardize life or

personal safety; or (b) impair "substantial due process rights of the requester" and the information

sought is not otherwise available.[5]  Hajro's request noted that he needed the copy of his alien

registration file in order to see the alleged evidence upon which the denial was based in time to

prepare his appeal.[6]

On November 19, 2007, Cejka, the Director of the San Francisco Office of USCIS, sent a

letter acknowledging receipt of Hajro's FOIA request and informing him that it did not qualify for

expedited processing[7] and would be processed on the Track 2 "complex track."  The Settlement

Agreement notwithstanding, since 2007, USCIS has used a three-track system for processing FOIA

requests: "Track 1" for simple requests, "Track 2" for complex inquiries that require additional

time, and "Track 3" for expedited processing for individuals subject to removal proceedings and

scheduled for a hearing before an immigration judge.[8] The letter did not include notice of any

---

[4] USCIS is an agency within the DHS. *See* Docket No. 1 ¶ 3.

[5] *See* Docket No. 11, Ex. A.

[6] *See id.* ¶ 42, Ex. J.

[7] *See id.* ¶¶ 44, 45 Exs. K, L. Hajro separately appealed the denial for expedited processing pursuant to 6 C.F.R. ' 5.9(a)(1). UCSIS denied the administrative appeal on the same ground as the original application, citing Hajro's failure to qualify under 6 C.F.R. § 5.5(d).

[8] *See* Special FOIA Processing Track for Individuals Appearing Before an Immigration Judge, 72 Fed. Reg. 9017-01 (Feb. 28, 2007).

3

"unusual circumstances" justifying an extension of the statutory 20-day time limit for advising Hajro of the agency's decision whether or not it would comply with his request.[9]

It is undisputed that USCIS failed to issue its determination on Hajro's FOIA request within the statutory 20-day time limit.[10] On March 4, 2008, the National Records Center identified 442 pages responsive to Hajro's request, and forwarded 356 pages in their entirety and 8 pages in part. The center withheld 78 pages.[11] According to Defendants, the 356 pages and 8 partial pages consisted of "the responsive, nonexempt, reasonably segregable portions of [Hajro's] alien file."[12] Hajro received the response to his FOIA request over three weeks later. On May 12, 2008, he initiated an administrative appeal of the FOIA response, arguing that it contained "no evidence of [the] alleged testimony regarding foreign military service" upon which the denial of naturalization was purportedly based, and seeking all of the withheld material, or in the alternative, those pages that the government determines contain such evidence, "as long as the government confirms that no other such evidence exists."[13] On July 31, 2008, the National Records Center released an additional 12 pages of documents and one page in part.[14] In December 2008, USCIS provided Hajro with a so-called "Vaughn Index"[15] to explain USCIS's withholdings, including interviewer notes, which it claims are exempt from disclosure under FOIA.[16]

---

[9] *See* 5 U.S.C. § 552(a)(6)(A), (B).

[10] *See* Docket No. 47-2 ¶ 12 ("Defendant exceeded the time statutorily allotted for processing Plaintiff's FOIA request").

[11] Docket No. 11, Ex. P.

[12] *See* Docket No. 47 at 2.

[13] *See* Docket No. 11-4, Ex. T. Hajro's alternative offer to USCIS was to provide written confirmation "that no such evidence exists in any of the withheld material."

[14] Docket No. 52-1, Attachment 1.

[15] The Vaughn Index consists of an agency's detailed statement, consistent with the indexing requirements set forth in *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975), *cert. denied*, 415 U.S.

Case No.: 08-1350
ORDER

**B.      Plaintiff Mayock**

James Mayock is an immigration attorney and was a plaintiff in a lawsuit filed 25 years ago

in this court against the Immigration and Naturalization Service ("INS").  In that action, Mayock

alleged that INS had a pattern and practice of violating various provisions of FOIA.  Mayock,

together with other immigration attorneys, submitted declarations to demonstrate that the INS often

took months to respond to FOIA requests, far in excess of the statutory time limit (which was then

10 days). The district court agreed and granted summary judgment in favor of Mayock, directing

INS to issue the appropriate notices for extension of time required by FOIA and enjoining the San

Francisco District Office of the INS from failing to comply with the statutory timing

requirements.[17]  On appeal, the Ninth Circuit reversed and remanded, finding that the district court

had overlooked the existence of genuine issues of material fact as to whether increasing workload

at INS offices created "exceptional circumstances" justifying its failure to respond within the

statutory time limits, and whether the agency had demonstrated "due diligence" in responding to

requests for information urgently needed by aliens who faced pending deportation or exclusion

proceedings.[18]

After remand, the parties entered into the Settlement Agreement discussed above, in which

INS agreed to implement expedited processing of a FOIA request where the requester demonstrates

that an individual's life or personal safety would be jeopardized or that substantial due process

---

977 (1974), justifying a determination that information subject to a FOIA request is exempt from
disclosure.

[16] See Docket No. 47-1. As of May 13, 2008, Hajro already had submitted his brief in the
underlying appeal of his naturalization denial. That appeal was denied on November 26, 2008. See
Docket No. 51 at 1.

[17] See Mayock v. INS, 714 F. Supp. 1558 (N.D. Cal. 1989), rev'd and remanded sub nom. Mayock
v. Nelson, 938 F.2d 1006 (9th Cir. 1991).

[18] See Mayock, 938 F.2d at 1007-08.

5

Case No.: 08-1350
ORDER

United States District Court
For the Northern District of California

rights of the requester would be impaired by the failure to process a request immediately.[19] The procedures for expedited processing under the terms of the Settlement Agreement included notification to the requester where the request failed to meet one of the two criteria, and subsequent processing of the request on the "appropriate track."[20]  The parties dispute whether the Settlement Agreement remains in effect.

In Mayock's immigration cases pertaining to this action, he sometimes files requests under FOIA to obtain the alien registration files for his clients.  In these cases, USCIS has not produced the requested records within the statutory 20-day time limit.[21]  Nor has the government provided written notice setting forth any "unusual circumstances" for an extension of time beyond the statutory limit.[22]  Plaintiffs have filed declarations from 26 other immigration attorneys who have encountered similar, routine delays in the processing of their and their clients' FOIA requests by USCIS in recent years.  On January 26, 2008, Mayock sent a notification of breach of the Settlement Agreement to Melville.[23]

## C.    Procedural History

In March 2008, Plaintiffs initiated this action for declaratory and injunctive relief under FOIA, 5 U.S.C. § 552 *et seq.* and the APA, 5 U.S.C. §§ 553, 702, 704, and 706.  In the First Amended Complaint ("FAC"), filed June 10, 2008, Plaintiffs assert nine causes of action, which

---

[19] *See* Docket No. 11, Ex. A.

[20] *Id.*

[21] *See* Docket No. 52-1, Attachment 4.

[22] *See id.*

[23] Paragraph 10 of the Settlement Agreement provides that Mayock should notify the District Director in writing of any perceived breach of the Agreement. Paragraph 11 of the Agreement provides that USCIS retains the "right to amend, change, revise or terminate any practice or policy" under the Settlement Agreement, but that Mayock "shall retain the right to institute a new action challenging" any such change and its consequences. *See* Docket No. 11, Ex. A.

Case No.: 08-1350
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

can be divided generally into those related to the production and withholding of documents in response to Hajro's FOIA request, and those related to the USCIS "Track 3" policy for processing FOIA requests.

Specifically, Plaintiffs claim:

(1) "Track 3" of Defendants' current, multi-track policy violates the Settlement Agreement;

(2) Defendants' denial of Hajro's request for expedited processing also violates the Settlement Agreement;

(3) The timing by which Defendants provided Hajro with the material responsive to his FOIA request violated FOIA Section 552(a)(6)(A) and 6 C.F.R. § 5.6(b);

(4) Defendants' failure to notify Hajro of the "unusual circumstances" that prevented USCIS from processing his FOIA request within the 20-day statutory limit violated 6 C.F.R. § 5.5(c)(1);

(5) Defendants have a pattern or practice of failing to comply with the timing requirements set forth by FOIA Sections 552(a)(6)(A), (B), (C);

(6) Defendants unlawfully withheld the information requested by Hajro in violation of FOIA Section 551 *et seq.* and 555(b), as well as Sections 702, 704, and 706 of the APA;

(7) Such withholding of nonexempt material violated Hajro's due process rights because it interfered with his ability to adequately appeal his naturalization denial and violated his right to a fair hearing and fundamental fairness;

(8) Defendants' implementation of the "Track 3" policy violates the Fifth Amendment guarantee of Equal Protection; and

(9) Adoption of the "Track 3" policy without notice and comment rulemaking procedure violated Section 553 of the APA.

On August 11, 2009, Defendants moved for summary judgment on the FAC in its entirety. On October 5, 2009, Plaintiffs responded to oppose Defendants' motion and themselves moved for summary judgment. On October 27, 2009, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing. Following the reassignment of the case to the undersigned in December

7

Case No.: 08-1350
ORDER

2010, both parties filed supplemental briefing regarding the implications on this case, if any, of recent decisions by the Ninth Circuit and the Supreme Court.[24]

## II.  LEGAL STANDARD

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]  The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[26]  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[27]  A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, to return a verdict for the nonmoving party.[28]  If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law."[29]  On cross-motions for summary judgment, the court must consider the evidence identified and submitted in support of, and in opposition to, both motions in order to determine whether one of the parties is entitled to judgment as a matter of law.[30]

---

[24] *See* Docket No. 73 (soliciting supplemental briefing from the parties regarding *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) and *Milner v. Dep't of the Navy*, 562 U.S. __ (2011)).

[25] Fed. R. Civ. P. 56(a).

[26] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[27] Fed. R. Civ. P. 56(e).

[28] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[29] *Celotex*, 477 U.S. at 323.

[30] *See Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

Case No.: 08-1350
ORDER

**United States District Court**
For the Northern District of California

## III.  DISCUSSION

### A.  Appropriate Defendants under FOIA, the APA, and the Settlement Agreement

Defendants contend that all FOIA claims against the individual government defendants should be dismissed for lack of jurisdiction.  Plaintiffs respond that because they allege not only a single violation related to Hajro's FOIA request, but a pattern and practice of violations, the agency heads and individual officers are appropriate defendants who may be sued in their official capacity.[31]  Plaintiffs note that in Mayock's previous suit against the INS, neither the district court nor the Ninth Circuit dismissed the Commissioner of the INS or the San Francisco District Director as individual defendants.[32]  Plaintiffs argue that, at the very least, Napolitano and Holder should be treated as synonymous with their agencies for the purpose of this litigation and should not be dismissed.

With respect to the FOIA claims, the court begins with the plain language of the statute.  FOIA authorizes the district court to "enjoin the *agency* from withholding agency records and to order the production of any agency records improperly withheld."[33]  In actions arising under FOIA, the proper defendant is therefore the federal agency, not the individual employees of that agency.[34]  Whatever the procedural history of Mayock's previous suit, Plaintiffs have offered no case law in support of their claim that as a matter of law a pattern and practice challenge under FOIA should be treated differently than a typical FOIA case.  Unlike in *Mayock v. Nelson*, where individual

---

[31] *See* Docket No. 35 at 14-15 (likening a FOIA lawsuit that alleges a pattern and practice of violations to any other pattern and practice law suit in which individual officers are sued in their official capacity).

[32] *See Mayock v. I.N.S.*, 714 F. Supp. 1558 (N.D. Cal. 1989), *rev'd and remanded sub nom. Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991).

[33] *See* 5 U.S.C. § 552(a)(4)(B) (emphasis added).

[34] *See Petrus v. Bowen*, 833 F.2d 581, 582-83 (5th Cir. 1987); *see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1294 (N.D. Cal. 1992).

defendants Alan C. Nelson and David N. Ilchert were the Commissioner of the INS and the INS District Director, respectively, Napolitano and Holder are not representatives of USCIS, the sole agency named by Plaintiffs as responsible for the FOIA violations.  USCIS therefore is the proper defendant to Plaintiffs' FOIA claims, and any injunctive relief granted against USCIS will be binding on the USCIS director, employees, and agents.

With respect to the APA claims, the APA provides that an action for judicial review "may be brought against the United States, the agency by its official title, or the appropriate officer."[35] Here, the agency directly responsible for implementing the Immigration and Nationality Act, and for processing Hajro's FOIA request, is USCIS.  Holder, in his capacity as Attorney General, is not an "appropriate officer" of either the USCIS or its parent organization, the Department of Homeland Security.  Plaintiffs' APA claims therefore cannot be sustained against Holder.  In contrast, the remaining individual defendants are appropriate agency officers against whom Plaintiffs may maintain their APA claims.

All other claims in this action are premised on the Settlement Agreement between the parties in *Mayock v. INS*.  Plaintiffs argue that the Department of Justice and DHS "historically have had a role in the implementation, execution, and improper termination of the Settlement Agreement," such that Holder and Napolitano are proper defendants to the suit.[36]  Although the Department of Justice was a signatory to the Settlement Agreement in 1992,[37] it ceded its responsibilities in implementing the Immigration and Nationality Act to the Department of Homeland Security effective March 1, 2003.[38]  Any role that the Department of Justice may have

---

[35] 5 U.S.C. § 703.

[36] *See* Docket No. 35 at 15-16.

[37] *See* Docket No. 11, Ex. A.

[38] *See* 6 U.S.C. §§ 271(b)(5), 557.

Case No.: 08-1350
ORDER

had with respect to implementing the agreement therefore terminated at least four years before

Hajro filed his November 19, 2007 expedited FOIA request.

Because none of Plaintiffs' claims may be asserted against Holder, summary judgment in

his favor is warranted. As to the remaining individual defendants, partial summary judgment in

their favor is warranted on Plaintiffs' FOIA claims.

## B.  Plaintiffs' Pattern and Practice Claims under FOIA

Plaintiffs submitted substantial evidence that USCIS routinely violates FOIA's time limits

when responding to requests from aliens for their alien registration files.  In addition to evidence of

USCIS's tardy response to Hajro's November 19, 2007 request, Plaintiffs have submitted

declarations from Mayock and 26 other immigration attorneys attesting to USCIS's repeated delays

of months and in some cases years in responding to aliens' requests for their registration files.[39]

USCIS has not offered any evidence to rebut Plaintiffs' evidence. Instead, Defendants argue that

Mayock lacks standing and that its routine violations fail to comprise a pattern or practice of

violations.

### 1.  Mayock Has Standing to Assert his Pattern and Practice Claims Against USCIS

Defendants specifically argue that Mayock is not a "requester" under FOIA and that his

position as an immigration attorney who has at times over the years made requests on behalf of his

clients is insufficient to confer standing.  Defendants cite generally to the minimum requirements

for constitutional standing set forth by the Supreme Court in *Lujan v. Defenders of Wildlife*.[40]

According to Defendants, Mayock has suffered no injury-in-fact either by any alleged delay in

processing Hajro's FOIA request or by any alleged breach of the Settlement Agreement.[41]

[39] *See* Docket No. 11, Ex. M; Docket Nos. 52-56, Attach. 4, 7.

[40] *See* 504 U.S. 555, 560-61 (1992).

[41] Docket No. 47 at 5; Docket No. 58 at 2.

Case No.: 08-1350
ORDER

United States District Court
For the Northern District of California

1   Defendants concede that a plaintiff may bring a claim alleging a pattern and practice of

2   unreasonable delay in responding to FOIA requests, but argue that the plaintiff must be the

3   requester in order to establish injury-in-fact.  Plaintiffs respond that Mayock has suffered an injury-

4   in-fact based on his work as an immigration attorney who makes FOIA requests on behalf of his

5   clients.

6          Defendants cite no authority for holding that only a requester, and not his attorney, has

7   standing to challenge a government agency's pattern and practice of responding to FOIA

8   requests.[42]  Defendants rely on *Gilmore v. U.S. Dep't of Energy* for the proposition that a plaintiff

9   has standing to bring a pattern or practice claim to challenge the delays in response to *his own*

10  FOIA requests, but not to a third party's requests.[43]  But Mayock is no mere third party to his

11  clients; he represents them as the most intimate of agents.  The delay in FOIA response time

12  prejudices Mayock's ability to effectively represent the interests of his client, just as it prejudices

13  the client's ability to access potentially critical information for the immigration case.[44]  *Gilmore*

14  does not address constitutional standing in this unique circumstance, where a representing attorney

15  seeks to bring a FOIA pattern or practice challenge under such an agency theory.

16         Moreover, Defendants admit that Mayock previously was found to have standing to make

17  just such a pattern and practice claim against INS based on prior requests he had made on behalf of

----

[42] The analysis might be different if Plaintiffs had not challenged USCIS's *pattern and practice* of
responding, but only USCIS's response to Hajro's request.

[43] *See* 33 F. Supp. 2d 1184, 1188-89 (N.D. Cal. 1998).

[44] Numerous attorney declarants have confirmed that FOIA delays hinder and prejudice their
representation.  *See, e.g.,* Docket No. 52-1, Attach. 7 at 17-18 ("The fact that USCIS does not make
alien registration files promptly available in response to FOIA requests has hindered my
representation of my clients in that by the time the records eventually become available, the need
for them is often stale or moot …. These lengthy delays are prejudicial to the proper representation
of my clients.").

12

Case No.: 08-1350
ORDER

his clients.[45]  The Ninth Circuit in *Mayock v. Nelson* did not question the district court's

determination that even though the case originally included certain named aliens represented by

Mayock and the issues regarding those named plaintiffs had been resolved, Mayock had standing

to continue the suit and prosecute the case "in his own name."[46]  Mayock's assertions in the instant

action effectively place him in the same position as he stood before the Ninth Circuit in 1992.

Defendants' argument that Mayock does not similarly allege a failure to respond within the

statutory time limits to his clients' FOIA requests is without merit, as the FAC and Mayock's

declaration explicitly state that he has filed such requests on behalf of his clients and it has taken

Defendants more than 20 days to produce a response.[47]  Mayock's FOIA requests on behalf of

those clients, along with Hajro's request and the requests referenced by the 26 attorney declarants,

together form the basis for Plaintiffs' allegation that Defendants have a pattern or practice of

failing to comply with the timing requirements set forth in 5 U.S.C. § 552(a)(6)(A), (B) and (C).

The fact that Mayock continues to work as an immigration attorney who sometimes needs

to request copies of his client's alien registration files pursuant to FOIA is as sufficient now as it

was over twenty years ago when he first filed suit against INS to seek enforcement of FOIA's

timing requirements.  USCIS has made no showing that Mayock's representations related to his

FOIA requests are inaccurate or subject to any factual dispute, or that in light of his 25 years of

---

[45] *See* Docket No. 47 at 6 n. 2 (citing *Mayock v. Nelson*, 938 F.2d 1006, 1007 n.1 (9th Cir. 1991)).

[46] *See Mayock v. I.N.S.*, 714 F. Supp. at 1560.

[47] Docket No. 11 ¶ 16; Docket No. 52-1, Attach. 4 ¶¶ 2, 3, 4 ("In my practice I have sometimes filed requests under the Freedom of Information Act to obtain the alien registration files for my clients who have a previous record with the Immigration Service. In none of these cases has the government ever produced the records I have requested within the statutory time period of twenty days nor has the government provided written notice setting forth any 'unusual circumstances' for an extension of time beyond the statutory period of twenty days.").

practice as an immigration attorney he will not continue to make such requests in the future.

Mayock thus has standing to assert his pattern or practice claims under FOIA against USCIS.[48]

### 2.  Plaintiffs Have Established a Pattern and Practice of USCIS FOIA Violations

It is undisputed that a plaintiff may bring a claim alleging "a pattern and practice of

unreasonable delay in responding to FOIA requests."[49]  Defendants argue that the only FOIA

request at issue is Hajro's November 2007 request; but this ignores the reference in Mayock's

declaration to other requests for which the government has not produced records in a timely

manner, as well as the declarations and exemplars of 26 other attorneys.  It also ignores the fact

that two independent, alleged violations are at issue based on USCIS's delayed response to Hajro's

FOIA request – the failure to provide a response within twenty days[50] and the failure to provide

written notice setting forth the "unusual circumstances" that would qualify USCIS for a ten-day

extension of time.[51]  Mayock and the other attorney declarants similarly testify to USCIS's

persistent failures with respect to both requirements.

Defendants also argue that the delay in providing a response to Hajro's request was due to

the fact that the National Records Center did not receive Hajro's request from the San Francisco

District Office for nearly three months.  Once received, Defendants point out that the request was

processed in under 10 days, and that this single incidence is insufficient to establish a pattern and

---

[48] The court further notes that, as discussed below, the Settlement Agreement confers standing on Mayock with respect to his claims that are premised on Defendants' failure to abide by the terms of the settlement.

[49] *See Liverman v. Office of the Inspector Gen.*, 139 Fed. Appx. 942, 944 (10th Cir. 2005) (quoting *Mayock v. Nelson*, 938 F.2d at 1008)). *See also Gilmore*, 33 F. Supp. 2d at 1189 (finding that plaintiff may allege a pattern or practice of untimely responses to his FOIA requests based even if a court already has determined that the documents sought were not improperly withheld).

[50] *See* 5 U.S.C. § 552 (a)(6)(A).

[51] *See id.* § 552 (a)(6)(B).

14

practice of delays.[52]  In addition, Defendants contend that an agency's delay in responding to a

FOIA request, standing alone, is not evidence of bad faith.[53]  Defendants' arguments confuse

whether the evidence supports a finding of a pattern or practice of FOIA violations with the basis

for injunctive relief.

　　　　A reasonable jury could only conclude that Plaintiffs have met their burden as to a pattern

or practice of timing violations.  Defendants contend that there is no evidence of a pattern of

unreasonable delay in USCIS's FOIA responses to Hajro.[54]  But this ignores Defendants own

admission that the three-month delay between the San Francisco district office's receipt of Hajro's

request in November 2007 and the central processing office's receipt of documents in February

2008 "exceeded the time statutorily allowed for processing [Hajro's] FOIA request."[55]  Defendants

also fail to note that the November 19 denial of Hajro's request for expedited processing, though

"[l]ess than 20 days" after Hajro made his November 7 FOIA request,[56] still exceeded the ten-day

deadline set by USCIS' regulations for notifying a requester of the decision on expedited

processing.[57]  Additionally, Mayock has testified that in the FOIA requests he has made on behalf

of his clients, USCIS has never responded within the twenty-day limit or with an explanation

---

[52] *See* Docket No. 47 at 9.

[53] *Id.* at 10 (citing *Goland v. Central Intelligence Agency*, 607 F.2d 339, 355 (D.C. Cir. 1978); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).

[54] *See* Docket No. 58 at 3.

[55] *See* Docket No. 47-2 ¶ 12.

[56] *See* Docket No. 58 at 3.

[57] *See* 6 C.F.R. § 5.5(d)(4).

Case No.: 08-1350
ORDER

United States District Court
For the Northern District of California

requiring more time.[58]  A recent FOIA response that Mayock received on behalf of his client shows a response time of approximately eight months.[59]

In sum, the experiences of Plaintiffs establish a pattern or practice of violations.  And twenty-six other attorneys have testified to encountering the same delays in the same context as Hajro and Mayock.  Defendants have not offered evidence to the contrary, pointed out inconsistencies in the record that would suggest a genuine issue of fact for trial, or come forward with even assertions that USCIS is in compliance with the timing requirements of FOIA.  Thus Defendants have not met their burden under Rule 56 and summary judgment on this issue in favor of plaintiffs is warranted.

### 3. Injunctive Relief to Remedy USCIS's Pattern and Practice of Violations

Injunctive relief is warranted in order to remedy a pattern and practice of FOIA violations by an agency where there is "a probability that alleged illegal conduct will recur in the future."[60]  In deciding whether to grant an injunction, the court must consider the effect on the public of disclosure or nondisclosure, the good faith of any intent to comply expressed by the agency, and the character of past violations.[61]

The evidence that the National Records Center acted without delay in processing Hajro's request once it received the documents from the San Francisco district office demonstrates good faith, but only to that part of the response.  Defendants offer no good faith explanation for the three-month delay of the district office or for the many extended delays testified to by Mayock and his peer immigration lawyers.  Nor did Defendants issue the required written notice for an

---

[58] *See* Docket No. 52, Attach. 4 ¶ 3.

[59] *See id.*, Attach. 4 at 6-7.

[60] *See Long v. United States Internal Revenue Service*, 693 F.2d 907, 909 (9th Cir. 1982).

[61] *See id.* (citing *GSA v. Benson*, 415 F.2d 878, 880 (9th Cir. 1969); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1952)).

Case No.: 08-1350
ORDER

extension of time pursuant to 5 U.S.C. § 552(a)(6)(B).  Even if delay alone is insufficient to indicate an absence of good faith,[62] the repeated occurrence of the delays and lack of any indication by Defendants of efforts to cease such violations in the future weighs in favor of a permanent injunction.[63]  In addition, the history of past violations by USCIS and its predecessor agency – going at least as far back as Mayock's first lawsuit against INS – demonstrates the persistent character of the violations and supports a finding that the violations are likely to continue.  Finally, the effect on the public of disclosure or nondisclosure is substantial where the information sought is not available through any other means, as is the case for Hajro and for Mayock and other attorneys requesting documents from their clients' alien registration files.[64]

### C.  Timing of USCIS's FOIA Response and Denial of Hajro's Expedited Process Request

Defendants seek summary judgment as to all of Plaintiffs' claims related to the un-timeliness of USCIS's response to Hajro's FOIA request, arguing that those causes of action are now moot.  Specifically, Defendants challenge as moot Plaintiffs' causes of action pertaining to the denial of Hajro's expedited request, the failure to respond within the 20-day statutory time limit, and the failure to notify Hajro of any "unusual circumstances" that would warrant an extension.[65]  Defendants rely on FOIA's prohibition against judicial review of an agency denial of expedited

---

[62] *See Goland*, 607 F.2d at 355.

[63] *See Long*, 693 F.2d at 909 ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate … to bar future violations that are likely to occur.").

[64] *Cf. Carlson v. U.S. Postal Service*, C 02-5471 RMW, 2005 WL 756573 at *8 (N.D. Cal. Mar. 31, 2005) (denying injunctive relief where the asserted pattern of FOIA timing violations revealed an average response time of 20.22 days, "which is very close to the statutory requirement of 20 days," and where the effect on the public is minimal because the information is already publicly available "on a piecemeal basis").

[65] *See* Docket No. 47 at 6.

17

Case No.: 08-1350
ORDER

processing of a request for records after the agency has filed a complete response to the request.[66]

According to Defendants, USCIS has considered and released "[a]ll reasonably segregable

nonexempt responsive records known to exist,"[67] rendering moot any delay in response.

Plaintiffs respond that USCIS's recurring timing violations are by nature "inherently

transitory" and thus qualify for an exception to the mootness doctrine.[68]  Plaintiffs point out that at

the time of filing their opposition and cross-motion, Hajro had filed a second application for

naturalization, in which a denial after hearing would require a FOIA request to obtain documents

related to the hearing – likely raising these same issues again.  Plaintiffs reason that the repetitive

nature of these agency processes, as further demonstrated by Plaintiffs' broader allegations of

systemic FOIA violations, creates a reasonable expectation that the same violations will recur.

Plaintiffs also argue that under FOIA itself, the district court has jurisdiction to review the denial of

expedited processing because Defendants' response to Hajro's request is not yet "complete."[69]

With respect to Plaintiffs' second cause of action based upon the November 2007 denial of

expedited processing of Hajro's FOIA request, the court agrees with Defendants that Plaintiffs do

not appear to challenge the adequacy of USCIS's search for responsive documents or its reliance

upon FOIA's exemptions to withhold some documents, but disagrees that Defendants' production

was "complete."  As discussed at length *infra* Part D, the court finds that Defendants erred in

concluding that all of the withheld documents are subject to a FOIA exemption.  The nonexempt

---

[66] *See* 5 U.S.C. § 552(a)(6)(E)(iv); *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (affirming that "the production of all nonexempt material, 'however belatedly,' moots FOIA claims") (citations omitted).

[67] *See* Docket No. 47 at 7.

[68] *See* Docket No. 51 at 17 (citing *Wade v. Kirkland*, 118 F.3d 667 (9th Cir. 1997)).

[69] *See id.* (citing 5 U.S.C. § 552(a)(6)(E)(iii), (iv)). As with the denial of Hajro's expedited request under the Settlement Agreement, the court addresses the sufficiency or completeness of USCIS's response to Hajro's FOIA request *infra*, Part D.

18

United States District Court
For the Northern District of California

1    portions of the withheld documents render USCIS's response incomplete and the expedited process

2    request subject to judicial review.  However, since Plaintiffs frame the denial of Hajro's expedited

3    request as being in breach of the Settlement Agreement, the court will address the merits of the

4    denial in its discussion of the Settlement Agreement status and any violations flowing from its

5    termination or alteration.  *See infra* Part E.

6         As to Plaintiffs' other allegations based on timing, Defendants offer only a conclusory

7    assertion that "[t]o the extent Plaintiff Hajro is challenging the timeliness of USCIS's FOIA

8    responses, those claims should be dismissed as barred by the statute or as moot."[70]  Presumably

9    this is similarly due to the fact that "however fitful or delayed the release of information under the

10   FOIA may be, once all requested records are surrendered, federal courts have no further statutory

11   function to perform."[71]  But as noted, the court finds that certain nonexempt records have yet to be

12   released to Hajro.  Additionally, Plaintiffs' claims are not moot insofar as they raise the specter of a

13   pattern or practice that remains unaddressed, even as the particular requests originally forming the

14   basis for the challenge are no longer active.[72]  The government has not countered Plaintiffs'

15   evidence that USCIS failed to comply with the requirements of Sections 552(a)(6)(A) and (B) in

16   Hajro and Mayock's cases, or Plaintiffs' contention that such failure to comply is symptomatic of

17   USCIS's policy for responding to FOIA requests for alien registration files.  The likelihood that

---

[70] *See* Docket No. 47 at 6.

[71] *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Papa*, 281 F.3d at 1013.

[72] Defendants have offered no evidence to suggest that the timing requirements of FOIA would be met if Hajro were to file another request as a result of his second naturalization application. Mayock's testimony, and that of the 26 other attorneys, further suggests an unwritten policy of delay and failure to issue a written explanation of "unusual circumstances" according to FOIA Sections 552(a)(6)(A), (B). In addition, Defendants' denial of Hajro's expedited process request pursuant to an allegedly improper and unlawful standard raises a question of a continuing, potentially unlawful policy.

Case No.: 08-1350
ORDER

USCIS will repeat the same violations against Plaintiffs and in the broader application of its

responses to such requests militates against a finding of mootness.[73]

## D.  Withholding of Non-Exempt Documents Under FOIA and the APA

Plaintiffs' remaining constitutional and FOIA-based claims stem from the allegedly

improper withholding of non-exempt documents from Hajro's alien registration file.  In the

Vaughn Index provided to Hajro, USCIS identifies and summarizes the content of the withheld

material and the stated bases for exemption from disclosure.  This includes a summary of

"Handwritten Notes" withheld pursuant to 5 U.S.C. §§ 552(b)(5) as part of the intra-agency

deliberative process in the adjudication of Hajro's application for naturalization, and to 5 U.S.C. §

552(b)(7)(C) as records or information compiled for law enforcement purposes.[74]  Defendants

argue that USCIS has met its burden in providing an affidavit and facts sufficient to justify each

stated exemption.  Plaintiffs argue that the withheld material is not wholly exempt from disclosure,

and the improper withholding of factual evidence has deprived Hajro of due process rights to

examine the evidence against him and to a fair hearing.  Plaintiffs further argue that Defendants'

action in withholding the requested information was arbitrary and capricious under the APA.

### 1.  Government's Burden to Establish Deliberative Process Exemption

Commonly referred to as the government's "deliberative process privilege," the exemption

under FOIA Section 552(b)(5) shields from public disclosure government records that are pre-

---

[73] *See Ukranian-American Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1377 (D.C. Cir. 1990) (denying government's mootness argument where plaintiffs challenged State Department's handling of a particular asylum incident and underlying policy, and the government did not offer any basis to doubt the existence of the policy even after the incident had terminated).  *See also Etuk v. Slattery*, 936 F.2d 1433, 1441-42 (2d Cir. 1991) (holding in the context of a class action that plaintiffs' challenge presented a live controversy even after the INS issued a remedy of replacement green cards to certain class members, because "nothing ensures that other members … will continue to receive adequate documentation in the future," and the purported solution did not resolve the legality of certain INS policies).

[74] *See* Docket No. 47-1 at 18; Docket No. 47 at 7 n.4.

Case No.: 08-1350
ORDER

decisional in nature.[75]  It was intended to exempt from FOIA "those documents, and only those

documents, normally privileged in the civil discovery context."[76]  The deliberative process

privilege protects advice, recommendations, and opinions that form the deliberative, consultative,

decision-making processes of government.[77]  Its primary purpose is to "prevent injury to the

quality of agency decisions" where "'frank discussion of legal or policy matters' in writing might

be inhibited if the discussion were made public."[78]  Other purposes include to "protect against

premature disclosure of proposed policies before they have been finalized or adopted; and to

protect against confusing the issues and misleading the public by dissemination of documents

suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons

for the agency's action."[79]

　　　　In determining whether USCIS's claim to exemption is valid, the court must assess the

function that the disputed documents serve within the agency.[80]  The deliberative process

exemption should be "applied 'as narrowly as consistent with efficient Government operation.'"[81]

The burden is on the agency to supply the court with sufficient information, such as by production

of a detailed Vaughn Index, to allow the court to make a reasoned determination that the claimed

---

[75] *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

[76] *Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C. Cir. 1975) (quoting *N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 149 (1975)).

[77] *N.L.R.B.*, 421 U.S. at 150-52.

[78] *Id.* at 150 (quoting S. Rep. No. 813, p. 9)).

[79] *Coastal States*, 617 F.2d at 866 (citing *Jordan v. U.S Dep't of Justice*, 591 F.2d 753, 772-774 (D.C. Cir. 1978)).

[80] *See id.* at 861 (citing *N.L.R.B.* at 138).

[81] *Id.* at 868 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)).

21

exemption is proper.[82]   The agency must show that document(s) withheld are both pre-decisional and deliberative in order to qualify for the privilege.[83]

Plaintiffs are correct that, in construing the deliberative process privilege, the Supreme Court has recognized that the privilege "requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other."[84]   This interpretation was later codified in the final paragraph of Section 552(b): "Any reasonably segregable portion of a record shall be provided … after deletion of the portions which are exempt under this subsection."[85]   The court must, however, take into account the deliberative process as a whole, and whether the disclosure of even factual material would reveal a decisionmaker's mental process.[86]   Where appropriate, the court may undertake *in camera* review

---

[82] *See id.* at 861; 5 U.S.C. § 552(a)(3).

[83] *Cal. Native Plant Soc'y v. Envtl. Prot. Agency*, 251 F.R.D. 408, 411 (N.D. Cal. 2008) (citing *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002)). The Ninth Circuit has defined "pre-decisional" as prepared in order to assist an agency decisionmaker in arriving at his decision, and "deliberative" as exposing the decision-making process in such a way as to reveal the mental processes of decisionmakers and discourage candid discussion within the agency.  *See Carter*, 307 F.3d at 1089-90.

[84] *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 89-91 (1973) (finding that FOIA's legislative history supports a balance wherein government may not withhold factual material that would be available but for its location in an internal memo alongside maters of policy or opinion, but neither requiring disclosure of confidential policy recommendations simply because the document also happens to contain factual data), *superseded in part by statute*, 5. U.S.C. § 552(b)(1), *as recognized in C.I.A. v. Sims*, 471 U.S. 159, 189 n.5 (1985). The court notes that the above-cited *Mink* analysis remains in force and was not affected by Congress' amendments to FOIA in response to other aspects of the *Mink* decision.  *See also Coastal States*, 617 F.2d at 867.

[85] 5 U.S.C. § 552(b).

[86] *See Cal. Native Plant Soc'y*, 251 F.R.D. at 413 (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118-19 (9th Cir. 1988)).

22

United States District Court
For the Northern District of California

1  to determine the applicability of the deliberative process exemption[87] and whether factual content

2  is so "inextricably intertwined" with deliberative content that it may not be segregated.[88]

3  **2.  USCIS Has Not Met Its Burden**

4  Plaintiffs rely on Hajro's inability to access the alleged evidence upon which the

5  government relied to deny his naturalization application, and the fact that none of the documents

6  released thus far by USCIS contain even a factual reference to his purportedly inconsistent or

7  misleading statements.  Plaintiffs emphasize that they do not seek the release of all handwritten

8  notes taken by the immigration officer who interviewed Hajro, but rather "any contemporaneous

9  evidence that Defendants might have that prove [Hajro] was asked about his foreign military

10  service at the interview in 2000."[89]  Plaintiffs contend that such evidence is merely factual and may

11  be reasonably segregated from the rest of the notes.  In the alternative, Plaintiffs seek *in camera*

12  inspection of the notes by the court.[90]  Defendants state that the court need look no further than the

13  agency's "'reasonably detailed affidavit describing the documents withheld and facts sufficient to

14  establish an exemption.'"[91]  So long as the affidavit identifies the documents withheld and explains

15  why each document is subject to an exemption, and is detailed enough for the court to make a "de

16  novo assessment" of the government's claim, Defendants argue that is sufficient for the court to

17  uphold the withholding.[92]

[87] *Id.* at 410-11.

[88] *See Ryan v. Dep't of Justice*, 617 F.2d 781, 790-91 (D.C. Cir. 1980), *abrogated on other grounds by Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001).

[89] Docket No. 51 at 24-25.

[90] *Id.* at 25 n.23.

[91] Docket No. 47 at 8 (quoting *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

[92] *Id.* (citing *Lion Raisins v. Dep't of Agriculture*, 354 F.3d 1074, 1079, 1082 (9th Cir. 2004)).

The Vaughn Index provided to Hajro identifies the handwritten notes, withheld in full, as "generated during the deliberative process engaged in by the Service regarding the adjudication of Harjo's (sic) application for citizenship."[93]  It goes on to state that the notes "reveal[] the inner thoughts of agency decision-makers concerning specific matters under advisement [and] proffer[] suggestions, which may or may not have been the action(s) ultimately taken by the government in the underlying case."[94]  The Index cites the chilling effect that public disclosure of the notes would have on decision-makers' need to engage in candid discussion and the free exchange of ideas.[95] Other supporting statements come from a USCIS Assistant Center Director in its FOIA unit, who attests that "the USCIS has processed and disclosed to Plaintiff all reasonably segregable non-privileged, nonexempt documents and information determined to be responsive to his FOIA request."[96]

These conclusory statements provide a meager basis for the court to make a reasoned determination that application of the exemption is proper, and without more, are insufficient to justify withholding of all the handwritten notes.[97]  Courts in this circuit have required substantially more in order to justify non-disclosure under the deliberative process exclusion.  For example, in *Cal. Native Plant Soc'y v. Envtl. Prot. Agency*, the district court found that the Environmental Protection Agency had not provided sufficient detail when identifying the purportedly privileged documents to withhold from discovery, notwithstanding the fact that for each claimed document,

---

[93] *See* Docket No. 47-1 at 18.

[94] *Id.*

[95] *Id.*

[96] Docket No. 47-2 ¶ 13.

[97] *See Vaughn*, 523 F.2d at 1143-45 (holding the agency may not merely assert in conclusory terms that material is predecisional; it must meet its "obligation to classify and differentiate meaningfully" exempt material and "discuss the role which the evaluative portions play in agency deliberations").

United States District Court
For the Northern District of California

the agency identified the date and relevant individuals, provided a descriptive statement (e.g.,

"Email re: Strategy for developing Conceptual strategy"), and then grouped each document into

one of six categories and provided a description and declaration as to why the documents were pre-

decisional and deliberative.[98]   The court held that the declarations were not sufficient and "merely

assert[ed] conclusory statements in a boilerplate format," failing to provide the detail needed to

determine the individual document's role in the decisionmaking process.[99]   Although *Cal. Native*

*Plant Soc'y* involved a challenge to discovery withholdings and not a FOIA exemption, the court's

analysis of the deliberative process privilege is the same, and illustrative of the high burden placed

on the government.[100]

It is nevertheless clear from USCIS's Vaughn Index explanation that the agency has

legitimate concerns that disclosure of the notes risks disturbing and publicizing deliberative process

that is essential to an investigative and adjudicative proceeding such as involves the naturalization

determination.[101]   The court does not doubt that at least a fair portion of the handwritten notes may

contain just the type of "agency give-and-take of the deliberative process  by which the agency

decision itself is made," and which necessitates some protection from disclosure.[102]   The problem

---

[98] *See* 251 F.R.D. 408, 413 (N.D. Cal. 2008).

[99] *See id.* (citing *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980); *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987); *Coastal States* 617 F.2d at 861)).

[100] *See id.* at 411 n.1. *See also Coastal States*, 617 F.2d at 861, in which the Ninth Circuit deemed insufficient the Department of Energy's Vaughn Index, which consisted of the identity of the authors of each memorandum at issue, to whom it was addressed, its date, and a brief description such as "Advice on audit of reseller whether product costs can include imported freight charges," as a basis for the claimed FOIA exemptions.

[101] *Cf. Coastal States*, 617 F.2d at 861 (concluding that Dep't of Energy's documents failed to qualify under the deliberative process privilege because they did not consist of suggestions or recommendations for agency policy, or of advice to a superior suggesting disposition of a case, did not contain "subjective, personal thoughts on a subject," and did not present a risk of chilling candor).

[102] *See id.* (quoting *Vaughn*, 523 F.2d at 1144).

is that USCIS has failed to substantiate this legitimate concern with any detailed affidavit or even a description of what type of material the notes cover and, in a non-conclusory manner, their role in the agency's process.[103]   Without at least some effort on the part of USCIS to justify wholesale withholding of the notes, the court has no basis to find that the documents meet the strict criteria of Section 552(b)(5).[104]   Furthermore, USCIS has not set forth any basis for the court to evaluate whether, taking into account the deliberative process as a whole, relevant factual information contained in the handwritten notes may be disclosed without revealing the mental process of the decisionmaker.[105]   Without evidence to the contrary, and given Plaintiffs' sole and limited interest in the fact of whether and when a certain question was asked of Hajro, and what, if any, his response, the court finds it reasonable to require USCIS to isolate the factual information requested and disclose it.

### 3.   Arbitrary and Capricious Under the APA

The court agrees with Defendants that Plaintiffs claims under the APA may not stand. Because FOIA provides an adequate remedy,[106] such that the court has ordered USCIS to provide Plaintiffs with the segregated, factual information outlined above, no further remedy under the APA is available.   Because Plaintiffs offer no argument or evidence to support their separate

---

[103] As Plaintiffs do not contest the withholding of identifying information as a "law enforcement record" under Section 552(b)(7), the court need not address that issue.

[104] The court recognizes, as have many before, that the burden imposed on the agency is substantial. But this merely exemplifies Congress' intention to preference disclosure over non-disclosure, and encourages the agency to "disclose exempt material for which there is no compelling reason for withholding." *See Coastal States*, 617 F.2d at 861 (quoting *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

[105] *See Cal. Native Plant Soc'y*, 251 F.R.D. at 413.

[106] *See Tucson Airport Auth. v. Gen'l Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1988) (noting that "only 'agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court' are subject to judicial review") (quoting 5 U.S.C. § 704).

Case No.: 08-1350
ORDER

United States District Court
For the Northern District of California

arbitrary and capricious APA claim, summary judgment in Defendants' favor is warranted on this issue.

### 4. Fundamental Due Process Rights

Plaintiffs argue that the unlawful withholding of information underlying USCIS's denial of Hajro's naturalization application violated his fundamental due process rights to a fair hearing. Specifically, Plaintiffs contend that Hajro has a constitutional right to see the evidence relied upon by Defendants in their decision to deny citizenship, and that denial of citizenship should not be based on "secret evidence" unless national security is involved.  Plaintiffs also point out that Hajro's counsel needed to see the evidence in order to prepare his client's appeal, such that these circumstances, like those discussed in other attorney declarations submitted by Plaintiffs, constituted a situation where expedited processing of the FOIA request would have been warranted under the due process protections of the Settlement Agreement.

Defendants offer no rebuttal to Plaintiffs' due process claim, other than their initial contention that the withholding was lawful pursuant to FOIA's exemptions.  The court finds that Plaintiffs have met their initial burden in establishing Hajro's need for the withheld information in order to prepare his appeal,[107] and Defendants fail to proffer any argument or evidence that would raise a triable issue of fact with respect to this claim.  Summary judgment on Hajro's due process claim thus is warranted in favor of Plaintiffs.

---

[107] The recent Ninth Circuit decision in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010) illustrates the importance of access to government documents that may have an impact on the fairness of alien naturalization proceedings.  Although *Dent* addresses only the statutory right to the alien's registration file in the context of pending removal proceedings, the court's reasoning carries broader meaning that is applicable here.  This includes the notion that "injustice may be done if the government successfully shields its documents from a person who ought to have access to them, particularly when the documents might change the result of the proceedings," as well as the fact that the parties "disagree about what [certain] documents mean shows the importance of having them where they are most needed, in Dent's [removal] proceedings." *See id.* at 371, 72.

27

Case No.: 08-1350
ORDER

United States District Court
For the Northern District of California

### E. USCIS's Track Three Policy and Termination of the Settlement Agreement

Plaintiffs seek enforcement of the 1992 Settlement Agreement.  Specifically, Plaintiffs claim that Defendants' multi-track policy for processing FOIA requests violates the Settlement Agreement, and that USCIS's denial of Hajro's request for expedited processing also violated the agreement.  Plaintiffs further argue that the regulations authorizing USCIS's three-track policy were promulgated in violation of notice and comment procedure under the APA.  Defendants respond that the court cannot enforce the Agreement because it has been superseded by statute.

### 1.  Enactment of EFOIA Amendments and Implementation of Track 3 Processing

In 1996, Congress passed the Electronic Freedom of Information Amendments of 1996 ("EFOIA").[108]  EFOIA directs agencies to promulgate regulations providing for "expedited processing" of two categories of FOIA requests: cases in which the requester demonstrates a "compelling need," and "in other cases determined by the agency."[109] Congress defined "compelling need" to mean that failure to obtain an expedited FOIA response "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or that "a person primarily engaged in disseminating information [has] urgency to inform the public" concerning federal government activity.[110]

In 2003, INS was dissolved and reconstituted within DHS.  The Department's implementing regulations mirror EFOIA's "compelling need" basis for expedited processing.[111] Pursuant to FOIA Section 552(a)(6)(D), the implementing regulations also authorize DHS components (such as USCIS) to implement two or more tracks for processing FOIA requests based

---

[108] Pub. L. 104-231, 110 Stat. 3048 (1996).

[109] *See* 5 U.S.C. § 552(a)(6)(E)(i).

[110] *See id.* 5 U.S.C. § 552(a)(6)(E)(v).

[111] *See* 6 C.F.R. § 5.5(b).

on complexity and time needed to respond.[112]  In 2007, USCIS established "Track 3" of its multi-track process for processing FOIA requests, providing for expedited service for persons facing removal proceedings.[113]  Based solely on EFOIA, the DHS implementing regulations, and USCIS's three-track process, outside the context of removal proceedings, there is no provision for expedited processing other than based on "compelling need."

### 2. Effect on the Settlement Agreement

Before EFOIA's agency mandate to provide for expedited processing, records were, and still are, generally processed on what is termed a "first-in, first-out" basis.[114]  As previously noted, the 1992 Settlement Agreement provided for an "exceptional need or urgency" exception to the first-in, first-out queue for cases involving threat to life or safety, or loss of substantial due process rights.[115]  Whether this court can enforce the Settlement Agreement turns on whether the "compelling need" standard based solely on (1) threat to life or safety, or (2) the need to disseminate information about the government, superceded entirely the preexisting expedited processing standard based on "exceptional need or urgency."

---

[112] *See id.* § 5.5(d)(1).

[113] *See* 72 Fed. Reg. 9017-01 (Feb. 28, 2007). The USCIS notice explains that Track 1 is for requests that can be processed in 20 days pursuant to FOIA, Track 2 is for complex requests that require more time, and Track 3 "for those individuals who have been served with a charging document and have been scheduled for a hearing before an immigration judge" and need "accelerated access" to their alien registration file.

[114] Before EFOIA, agencies had 10 days to respond to a FOIA request.  As amended, agencies received double the time to respond (20 business days), and triple the time (30 business days) upon advising the requester of "unusual circumstances."

[115] *See* Docket No. 11, Ex. A. Prior to the Settlement Agreement, this standard was adopted by the Department of Justice and INS in guidance documents, in part to assist requesters with a need for time sensitive information and where delay would threaten their due process rights.  *See* Dep't of Justice, *FOIA Update*, Vol. IV, No. 2 (1983), *available at* http://www.justice.gov/oip/foia_updates/Vol_IV_3/page3.htm (DOJ *Open America* standard for expedited processing).  *See also* Docket No. 11, Ex. B at 21A-B.

1    Plaintiffs argue that to read the "compelling need" standard narrowly as the only means to

2    faster resolution of a FOIA request would turn the congressional intent of EFOIA on its head and

3    lead to the frequent impairment of substantial due process rights.[116]  Instead, Plaintiffs urge the

4    court that the only constitutionally sound way to read Section 552(a)(6)(E)(i) is that the

5    "exceptional need or urgency" standard remained in force alongside "compelling need."  In

6    support, Plaintiffs offer a statement published by DHS concurrent with its 2003 regulations on

7    FOIA implementation: "*Except to the extent a Department component has adopted separate*

8    *guidance* under FOIA or the Privacy Act, the provisions of this subpart shall to apply [sic] each

9    component of the Department."[117]  According to Plaintiffs, the Settlement Agreement was just such

10   a "separate guidance."  In the alternative, Plaintiffs argue that the "exceptional need or urgency"

11   standard remained in force pursuant to FOIA Section 552(a)(6)(E)(i)(II), which provides for

12   expedited processing "in other cases determined by the agency."

13

14   Defendants counter simply that Congress would have included the due process language of

15   the Settlement Agreement and other agency guidelines had it intended those provisions to remain.

16   They argue that Congress did not do so, and moreover, courts have interpreted Congress' intentions

17   for the EFOIA expedition categories to be "narrowly applied."[118]  Neither party offers case law in

18   support of its position.

19

20

21

22

---

23   [116] *See* Docket No. 51 at 6; Docket No. 35 at 5-6. Plaintiffs point to the current regulations of the State Department and Department of Justice, both which have retained the "exceptional need or urgency" standard for expedited processing, in protection of due process rights. *See, e.g.*, 22 C.F.R. § 171.12(b)(1) (State Department); 28 C.F.R. § 16.5(d)(iii) (DOJ).

24

25   [117] *See* Freedom of Information Act and Privacy Act Procedures, 68 Fed. Reg. 4056-01 (Jan. 27, 2003) (emphasis added).

26

27   [118] *See Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26 (Sept. 17, 1996)).

28

Case No.: 08-1350
ORDER

In *Envtl. Defense Fund, Inc. v. Costle*,[119] the court confronted similar arguments from a group of companies seeking to invalidate a settlement agreement in which the EPA outlined a new regulatory strategy for combating toxic pollutants in water emissions.  Congress subsequently amended the federal water pollution laws to include certain aspects of the regulatory framework outlined in the agreement.  The companies argued that the amendments did not merely ratify the agreement, but devised a comprehensive toxics control program that supplanted it entirely.[120]  The court looked first to the language of the statutory amendments and determined that there was no clear intention to supercede, because unlike cases in which Congress "required [the agency] to adopt a different regulatory approach" or in which "there is a clear conflict between the terms of a settlement agreement and the provisions of a subsequent Act of Congress,"[121] the amendments appeared to intend the agreement "to remain in effect to supply the missing details of a cohesive strategy for controlling toxic water pollution."[122]

As in *Envtl. Defense Fund*, there is no direct conflict here between the EFOIA amendments and the Settlement Agreement.  Additionally, Congress authorized agencies to set additional criteria for expedited FOIA processing, making clear that "compelling need" does not need to be the sole basis.[123]  Finally, the DHS implementing regulations provided for retaining separate

---

[119] 636 F.2d 1229 (D.C. Cir. 1980).

[120] *See id.* at 1238-39.

[121] *See, e.g.*, *System Fed'n No. 91 v. Wright*, 364 U.S. 642 (1961) (finding that Congressional act permitting contracts requiring union-only laborers superceded settlement agreement that had enjoined railway companies from discriminating against non-union employees); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855) (dissolving injunction issued by lower court when subsequent Act of Congress eliminated the public right that the injunction had served to protect).

[122] *See* 636 F.2d at 1241.

[123] *See* 5 U.S.C. § 552(a)(6)(E)(i).

Case No.: 08-1350
ORDER

guidance to the extent a component agency had already put such guidance into place.[124]   These

indications, taken as a whole and without any evidence to the contrary, demonstrate that the

Settlement Agreement was not supplanted by EFOIA and Plaintiffs may seek to enforce the

agreement.

### 3. Notice and Comment Under the APA and FOIA

Plaintiffs seek to invalidate USCIS's adoption of Track 3 processing on the ground that it

did not comply with the APA's notice and comment rulemaking process under 5 U.S.C. § 553, nor

with FOIA's requirement for "notice and receipt of public comment" under 5 U.S.C. §

552(a)(6)(D)(i).   Defendants argue that Track 3 is a "rule of agency organization, procedure, or

practice" that does not require formal notice and comment rulemaking procedures.[125]   Yet

Plaintiffs point out that even if Track 3 were merely a "rule of agency organization" affecting

internal procedures, as opposed to underlying rights or interests, the exemption under the APA

does not apply if notice is required by statute.

The APA sets forth procedures for agency rulemaking that include (1) notice in the Federal

Register of the rule making procedures and substance of the proposed rule, (2) an opportunity for

interested persons to participate through submission of written comments to be considered by the

agency, and (3) at least 30 days between publication of the adopted rule and its effective date.[126]

The APA also provides exceptions to the requirements for notice and comment rulemaking,

including for "rules of agency organization, procedure, or practice."[127]   This exception does not

---

[124] *See* 68 Fed. Reg. 4056-01 (Jan. 27, 2003).

[125] *See* 5 U.S.C. § 533(b)(3)(A).

[126] *See id.* § 533(b)-(d).

[127] *See id.* § 553(b)(3)(A).

Case No.: 08-1350
ORDER

apply "when notice or hearing is required by statute."[128]  FOIA's provision for institution of

multitrack processing by agencies requires such notice: "Each agency may promulgate regulations,

pursuant to notice and receipt of public comment, providing for multitrack processing of requests

for records."[129]

Defendants argue extensively that USCIS's Track 3 process is a procedural rule, subject to

the exemption under the APA, 5 U.S.C. § 553(b)(3)(A), because it structures the agency's own

internal process for reviewing qualifying FOA requests.  Defendants compare the USCIS Track 3

process to procedures implemented by the Interstate Commerce Commission for streamlining

petitions for railway line abandonment, in which case the Supreme Court affirmed without written

opinion the lower court's determination that the process was exempt from APA notice and

comment under § 553(b)(3)(A).[130]  Defendants further argue that Track 3 qualifies for the

exemption because it does not affect the underlying rights or interests at stake, such as by creating

criteria for evaluating the merits of a FOIA claim, but merely affects the speed at which the claim

is processed.[131]  Defendants also contend that DHS promulgated its regulation respecting expedited

FOIA requests pursuant to the APA and FOIA notice and comment procedures.[132]

Even accepting Defendants' position that DHS properly promulgated its regulation 6 C.F.R.

§ 5.5 in accordance with the APA and FOIA does not resolve whether USCIS's adoption of Track

3 without any comment procedure was also proper.  Defendants' arguments that Track 3 is not a

---

[128] *Id.* § 553(b).

[129] *See* 5 U.S.C. § 552(a)(6)(D)(i).

[130] *See* Docket No. 47 at 13-14 (citing *Commonwealth of Pa. v. United States*, 361 F. Supp. 208 (M.D. Pa. 1973), *aff'd per curiam*, 414 U.S. 1017 (1973) (mem.)).

[131] *See id.* (citing *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001)).

[132] *See* Docket No. 58 at 4-5 & n.4 (explaining DHS's process for publication in the Federal Register and call for comments in the context of establishing its interim final rule "without a delayed effective date").

Case No.: 08-1350
ORDER

regulation and therefore is exempt from the APA's notice and comment requirements ignore the plain language of the APA's carve-out for notice required by another statute. In this case, that statute is FOIA; and FOIA's directive to agencies to provide for "notice and receipt of public comment" in the context of multitrack regulation promulgation is unambiguous. On these grounds, USCIS's Track 3 policy should have been promulgated in accordance with the "notice and receipt of public comment" mandate in FOIA and under the APA. The court therefore finds that publishing notice of Track 3's adoption in the Federal Register without opportunity for receipt of public comment was in violation of 5 U.S.C. § 553(b)(3)(A) and 5 U.S.C. § 552(a)(6)(D)(i). Summary judgment in favor of Plaintiffs is warranted as to Plaintiffs' ninth cause of action.[133]

### 4. Track 3 Does Not Violate Constitutional Guarantees of Equal Protection

In their eighth cause of action, Plaintiffs argue that the Track 3 policy violates the Fifth Amendment guarantee of equal protection under the law by creating an arbitrary distinction between aliens facing removal proceedings with a case pending before an immigration judge, and those who, like Hajro, are not in removal proceedings, yet still require immediate processing of their FOIA requests in order to ensure due process in their immigration cases. Plaintiffs contend that the distinction between the two classes of aliens lacks any rational basis, because both classes require processing of their FOIA requests without delay in order to avert substantial impairment of their due process rights. Defendants respond that Plaintiffs have failed to establish that they fall within a classification or group whose rights have been burdened by Defendants' discriminatory application of the law, or burdened differently than other groups.[134] Defendants also argue that

---

[133] The court does not reach Plaintiffs' argument regarding whether DHS regulation 6 C.F.R. § 5.5(b), (d) also was promulgated in violation of the applicable notice and comment provisions. Determination of this issue, which is raised for the first time in Plaintiffs' brief on summary judgment, is not necessary for disposition of the issues before the court, based on the complaint.

[134] *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

34

Case No.: 08-1350
ORDER

even assuming Hajro falls within a burdened group, aliens, Plaintiffs have not alleged that he is a victim of any purposeful discrimination.

As a first step, equal protection analysis requires the plaintiff to establish a government classification and identify a similarly situated group against which plaintiff's group may be compared.[135]  Here, Plaintiffs have identified a government classification under Track 3 that distinguishes aliens with a removal proceeding court date from aliens with no court date or who are not in removal proceedings.  Hajro is subject to this classification.  As a second step, the court reviews whether the challenged classification is rationally related to a legitimate state purpose.[136]

Plaintiffs' argument that USCIS's distinction between alien groups applying for expedited FOIA processing lacks a rational basis ignores the obvious, practical difference in the immediate consequences faced by each group.   Even if both alien groups face potential burdens in presenting their immigration cases and even impairments to their substantive due process rights, one of those groups faces imminent deportation.  Under the low threshold required by rational basis analysis, this consequence alone justifies the agency's determination that persons facing removal, who already have cases pending before immigration judges, merit expedited treatment of their FOIA requests.[137]  Plaintiffs have failed to meet their burden to establish no rational basis for the claimed, discriminatory classification.  Thus, the court will grant summary judgment in favor of Defendants on Plaintiffs' eighth cause of action.

---

[135] *See id.*

[136] *See Hoffman v. United States*, 767 F.2d 1431, 1436 (citing *Western & Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668 (1981)). Plaintiffs have rightly not attempted to argue that this classification is subject to strict or intermediate scrutiny.

[137] This is not to suggest that the other classifications do not similarly merit expedited treatment based on their due process rights to a fair hearing before the immigration court or on appeal, as discussed *infra* Part D.  That determination, however, has no bearing on Plaintiffs' equal protection claim.

United States District Court
For the Northern District of California

# IV.  CONCLUSION

Based on the foregoing, the court finds that partial summary judgment in Plaintiffs' favor is proper as to the first, second, third, fourth, fifth, sixth (except as noted below), seventh, and ninth causes of action.  Summary judgment in favor of Defendants is proper as to the eighth cause of action, as well as to the sixth cause of action with respect to Plaintiffs' claim that withholding of the non-exempt information was arbitrary and capricious under the APA. Summary judgment is also proper in favor of Holder as to all causes of action, and in favor of Napolitano, Cejka, and Melville as to the third, fourth, fifth, and sixth causes of action.

**IT IS SO ORDERED.**

Dated:  October 13, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

36

Case No.: 08-1350
ORDER